UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
ERNEST E. MASTROIANNI,

                Plaintiff,

  - against -

EDWARD REILLY, JAMES NEAL and
DR. MINETTI,

                Defendants.
--------------------------------------------------------X

**MEMORANDUM OF DECISION AND ORDER**
02 Civ. 846 (ADS) (ETB)

**APPEARANCES:**

**ANTHONY J. COLLELUORI, ESQ.**
Attorney for the Plaintiff
80 Froehlich Farm Blvd.
Woodbury, New York 11797

**OFFICE OF THE COUNTY ATTORNEY OF NASSAU COUNTY**
Attorney for the Defendant Edward Reilly
One West Street
Mineola, New York 11501
        By:    Deputy County Attorney Catherine N. Gray

**TROY & TROY**
Attorneys for the Defendant James Neal
2100 Middle Country Road
Centereach, New York 11720
        By:    Alex Sansone, Esq., Of Counsel

**SPATT, District Judge.**

       The Plaintiff Ernest Mastroianni (Mastrioianni or the "Plaintiff"), an inmate at

the Nassau County Correctional Center ("NCCC"), proceeding *pro se*,, commenced

1

this action pursuant to 42 U.S.C. § 1983 against the Nassau County Sheriff Edward Reilly ("Reilly"), the NCCC Medical Director James Neal ("Neal"), and the NCCC Director of Psychiatry Dr. Minetti ("Dr. Minetti") (collectively, the "Defendants"), alleging a violation of his Fifth, Eighth, and Fourteenth Amendment rights.

On October 24, 2002, United States Magistrate Judge E. Thomas Boyle directed the parties to show cause, in writing, as to whether the Plaintiff's action should be dismissed for failure to exhaust administrative remedies prior to commencing this action. On May 28, 2003, Judge Boyle held an evidentiary hearing with respect to this issue. Prior to the hearing counsel was appointed for the Plaintiff. The Plaintiff was represented by counsel at the hearing. Thereafter, on August 12, 2003, Judge Boyle issued a Report and Recommendation (the "Report") recommending that this action be dismissed on the grounds that the Plaintiff failed to exhaust his administrative remedies prior to initiating this action. Presently before the Court are the Plaintiff's objections to the Report.

## I. BACKGROUND

At the outset, the Court notes that none of the Defendants responded to or opposed the Plaintiff's objections.

### A. The Complaint and Evidentiary Hearing

The Plaintiff's complaint alleges that from the time he was incarcerated on February 6, 2001 up until the filing of the complaint in the instant action on January

25, 2002, he had been denied proper medical treatment for his many health conditions. In particular, the complaint includes allegations that (1) the Plaintiff's blood pressure is not being controlled; (2) he never visited a medical doctor for an examination; (3) his requests for an echo stress test have repeatedly been denied; (4) he requires an operation and proper bedding to correct a back injury sustained while incarcerated; and (5) he was denied medication and a proper diet for his medical conditions. The Plaintiff also alleges that the defendants failed to "properly train and supervise subordinates to recognize and properly treat [his] serious medical conditions in the correct and proper timely fashion."

With respect to his attempts to exhaust the administrative remedies at the NCCC, the Plaintiff indicates that he has "placed numerous [g]rievances, and numerous times [he] had been seen and the problem still was not [rectified]." In addition, the Plaintiff alleges that as the result of the grievance procedure "nothing was accomplished [and that] the problem is getting worse."

At the May 28, 2003, evidentiary hearing, the Defendants introduced three separate grievances filed by the Plaintiff between February 7, 2001 and January 25, 2002 regarding the allegations in his complaint. A fourth unrelated grievance was also filed by the Plaintiff in his capacity as "Dorm Representative." This grievance asserted dissatisfaction with the telephone service. The Plaintiff also availed himself of one "supervisor intervention" procedure during the relevant time period with

respect to his medical problems, and had two complaints returned to him for vagueness and failure to utilize the "Informal Grievance Process."

At the hearing, Kenneth Williams ("Williams"), the Inmate Grievance Coordinator testified on behalf of the Defendants with regard to the grievance procedure. Williams testified that claims regarding medical care are considered grievable issues. He also testified that if an inmate could not gain access to a grievance form, he would accept written letters from the inmate, which he did in the Plaintiff's case. After receiving a grievance form from an inmate, Williams would issue a decision and inform the inmate of the decision in writing. At that point, the inmate was given the option of either accepting Williams' decision and signing the form in the appropriate place, or rejecting the decision and appealing to the Chief Administrative Officer. After that, the inmate could further appeal to the New York State Commissioner of Corrections. Williams further testified that inmates were advised of the grievance process and procedures in the inmate handbook which each inmate received upon entry to the NCC. Instructions were also posted in the housing area. The Plaintiff disputes that he was ever informed of the appeal process and also denies that the Inmate Handbook contained instructions on grievance procedures.

In support of their argument for dismissal of the action for failure to exhaust, the Defendants contend that while the Plaintiff filed grievances with respect to his medical conditions, he accepted the decisions of the Grievance Coordinator rather

than appealing those decisions to a higher authority. In particular, the Plaintiff checked off the box on the grievance form stating "I have accepted and read the Grievance Coordinator's decision." With respect to supervisor intervention, the plaintiff checked off the box stating "I have been able to resolve the aforementioned problem with the Deputy Tour Commander," and signed the form. Although on both forms the Plaintiff had the opportunity to appeal the decision, the Plaintiff conceded that he never asked what the statement meant or how he could file an appeal. The Plaintiff claims that he was never properly informed of the procedures to follow with respect to filing grievances, denied a grievance form when he asked for one, and was threatened and harassed when he attempted to file grievances.

In his report, Judge Boyle concluded that the Plaintiff's contention that he did not know how to appeal and/or officers and employees of the NCCC prevented him from appealing was unfounded because the Plaintiff "managed to file grievances on four separate occasions, as well as a supervisor intervention request and two other complaints which were returned to him for vagueness." As such, Judge Boyle recommended to the District Court that this case be dismissed without prejudice on the basis that the Plaintiff failed to exhaust his administrative remedies.

**B.    The Plaintiff's Objections**

In addition to objecting to Judge Boyle's finding that the Defendant had made its grievance procedures known to the Plaintiff, he also objects on the ground that:

> Magistrate Boyle, in accepting the Defendant's theory that the plaintiff failed to exhaust administrative remedies, ignored the fact that defendants had set up an impossible appeals process that was meant to solve prisoner's health complaints but to be sure they could not sue the institution. The facts adduced at the hearing showed that plaintiff had regular complaint[s] concerning his health treatment and was receiving his medicine. Each time plaintiff was able to file a complaint about his treatment, his case would be examined and a promise to remedy the situation would occur. Each time the plaintiff would accept the offer to remedy the situation and each time the Jail would correct the problem for a week or so. When the problem would reoccur the jail would refuse to allow the plaintiff to reopen his claim so he could appeal the failure to cure. This would result in his having to restart the claim and cause a circular effect styming any attempt to correct the situation once and for all.

Letter from Colleluori to Court dated September 11, 2003.

As indicated above, the Defendants did not respond to these objections.

## II. DISCUSSION

**A.  Standard of Review**

Pursuant to 28 U.S.C. § 636(b)(1), any party may file written objections to the report and recommendation of a magistrate judge within ten days after being served with a copy. *Id.*; *see also* Fed. R. Civ. P. 72(a). Once objections are filed, the district court is required to make a de novo determination as to those portions of the report and recommendation to which objections were made. *See* 28 U.S.C. § 636(b)(1); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989). The phrase "de novo determination"

in section 636(b)(1)--as opposed to "de novo hearing" - - was selected by Congress "to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations." *United States v. Raddatz*, 447 U.S. 667, 676, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980).

Section 636 does not require the district court "to rehear the contested testimony in order to carry out the required 'determination.' " *Id.* at 674, 100 S. Ct. 2406. Rather, in making such a determination, the district court may, in its discretion, review the record and hear oral argument on the matter. *See Pan Am. World Airways, Inc. v. International Brotherhood of Teamsters*, 894 F.2d 36, 40 n. 3 (2d Cir. 1990). Furthermore, the district judge may also, in her sound discretion, afford a degree of deference to the Magistrate Judge's Report and Recommendations. *See U.S. v. Raddatz*, 447 U.S. 667, 676, 100 S. Ct. 2406, 65 L. Ed. 2d 424 (1980).

**B.     Exhaustion of Administrative Remedies**

At the outset, the Court emphasizes that many of the authorities cited to in this decision were decided subsequent to the issuance of the Report by Judge Boyle.

The Prison Litigation Reform Act of 1996 ("PLRA") 42 U.S.C. § 1997e(a) was amended to provide that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Because an action for deliberate medical indifference is an action "with respect to prison conditions," it is subject to the PLRA's exhaustion requirements. *Harris v. N.Y.C. Dept. of Corrections*, 00 Civ. 7164, 2001 WL 845448, at *2 (S.D.N.Y. July 25, 2001).

Administrative exhaustion is not a jurisdictional predicate. *See Richardson v. Goord*, 347 F.3d 431, 434 (2d Cir. 2003). Rather, a failure to exhaust administrative remedies is an affirmative defense. *See Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004); *see also Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004); *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999). As such, the Defendants bear the burden of proving that the Plaintiff failed to exhaust administrative remedies. *Ruocco v. Tung*, 2004 WL 721716, at *5 (D. Conn. March 30, 2004) ("By characterizing non-exhaustion as an affirmative defense, the Second Circuit requires the defendants to present proof of non-exhaustion."); *See also Reyes v. Punzal*, 206 F. Supp. 2d 431, 433 (W.D.N.Y. 2002) ("[I]in the Second Circuit, failure to comply with the PLRA's exhaustion requirement is viewed as an affirmative defense . . . and . . . defendant bears the burden of proving plaintiff's failure to comply with the exhaustion requirement") (citations omitted); *Hallett v. New York State Dep't of Correctional Serv.*, 109 F. Supp.2d 190, 196-97 (S.D.N.Y. 2000). Where exhaustion of administrative remedies is required, failure to do so must result in dismissal of the claims. *Neal v. Goord*, 267 F.3d 116, 117 (2d Cir. 2001).

However, in certain circumstances, a prisoner's failure to exhaust available administrative remedies may be excused. *Berry v. Kerik*, 366 F.3d 85, 87-88 (2d Cir. 2004). To that end, courts employ a three-part inquiry in a case such as this where a prisoner contends that his failure to exhaust should be excused. *Hemphill v. N.Y.*, 380 F.3d 680, 686 (2d Cir. 2004). The factors that must be determined are: whether (1) administrative remedies were "available" to the plaintiff; (2) the defendant has waived the non-exhaustion defense by failing to raise or preserve it; or (3) the defendant's own actions estop them from raising non-exhaustion. *Id.* In addition "a plaintiff may successfully refute a defendant's contention that he has failed to exhaust his administrative remedies if he can demonstrate that . . . 'special circumstances' justify his failure to comply with this requirement." *Hoover v. Hardman*, No. 99 CIv. 1855, 20005 WL 1949890, at * 2 (N.D.N.Y. Aug. 15, 2005) (quoting *Hemphill*, 380 F.3d at 686).

In his objections, the Plaintiff argues that each time he would file a grievance or lodge a complaint with the NCCC, officials at the NCCC would issue a written "promise" to remedy the situation. Presumably believing that this promise would remedy his grievance, the Plaintiff would sign the form agreeing to this remedy and thus, "resolve" the appeal. Because the written "promise" was favorable to the Plaintiff, he had no reason to appeal the Grievance Coordinator or NCCC official's decision. This contention is supported in the record. For example, during cross-

examination, Williams testified as follows:

> Q. After the complaint of 5/7/01, that's Exhibit B, and the promise that the medications would be provided on a regular basis, what did your officers do to make sure that happened
>
> A. We're speaking of Exhibit B?
>
> Q. Yes. What did you do, after that was signed off, to make sure it actually happened on a consistent bases thereafter?
>
> A. There was nothing for me to do.
>
> Q. There was nothing you did.
>
> A. There was nothing for me to do.
>
> . . .
>
> Q. Did you see if he got the meds a couple of weeks later? Did you check back?
>
> A. No.
>
> Q. On Exhibit A, on 2/26/01, where he complained about not getting the meds, to Officer Fagone, did you check back, after she promised to give him meds, to see if they were delivered?
>
> A. No.

In *Sultan v. Wright*, 265 F.Supp.2d 292 (S.D.N.Y. 2003), the court addressed a similar issue and found that the plaintiff had adequately exhausted his grievance administratively:

> An inmate is not required under the PLRA to continue to complain, as here, after his grievance has been addressed, but the problem has not been corrected. *Marvin v. Goord*, 255 F.3d 40, 43 n. 3 (2d Cir. 2001). If a prisoner had to grieve non-compliance with favorable

>decisions under the PLRA, prison officials could keep
>prisoners out of court indefinitely by saying "yes" to
>their grievances and "no" in practice. *Kaplan v. New
>York State Dep't of Corr. Servs.*, No. 99 Civ. 5856, 2000
>WL 959728, at *3 (S.D.N.Y. July 10, 2000); *McGrath v,
>Johnson*, 67 F. Supp. 2d 499, 510 (E.D. Pa. 1999).

Thus, the Court finds that special circumstances justify the Plaintiff's non-compliance with the PLRA exhaustion requirement. The Court further finds that the Defendants did not meet their burden of establishing that the Plaintiff failed to exhaust his administrative remedies. Accordingly, the Plaintiff's objections to the Report are sustained.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED**, that the Plaintiff's objections to the Report and Recommendation by United States Magistrate Judge E. Thomas Boyle are **SUSTAINED**; and it is further

**ORDERED**, that the parties are directed to report to Judge Boyle forthwith for discovery on an expedited basis.

**SO ORDERED.**

Dated: Central Islip, New York
September 30, 2005

_____
ARTHUR D. SPATT
United States District Judge